IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE BURLINGTON INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-09-2424 |
| SUPERIOR NATIONWIDE LOGISTICS, LTD., TOBY ALLEN POTTER, T.A. POTTER MANAGEMENT, L.L.C., A & P TRANSPORTATION CO., INC., CLAYTON ALLEN POTTER dba NATCO-HOUSTON, ROBERT P. MCINNIS, and NORTH AMERICAN TRANSPORT CONCEPTS, INC., | § § § § § § § § § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending are Plaintiff The Burlington Insurance Company's Motion for Summary Judgment (Document No. 26) and Defendants Superior Nationwide Logistics, Ltd., Toby Allen Potter, T.A. Potter Management, LLC, A&P Transportation Co., Inc., and Clayton Allen Potter's Cross-Motion in Response to Plaintiff's Motion for Summary Judgment (Document No. 33) and Motion to Join Bankruptcy Trustee as Necessary Party and Motion to Vacate Submission Date on Plaintiff's Motion for Summary Judgment (Document Nos. 31 & 32). After carefully considering the motions and the applicable law, the Court concludes as follows.

I.   Background

Plaintiff The Burlington Insurance Company ("Burlington") seeks declaratory judgment that it has no duty to defend or indemnify Defendants Superior Nationwide Logistics, Ltd., Toby Allen Potter, T.A. Potter Management, LLC, A&P Transportation Co., Inc., Clayton Allen Potter, or Robert McInnis from counterclaims and third-party claims filed by North American Transport Concepts, Inc. ("NATCO") in case number 2008-65931 pending in the 133rd Judicial District Court of Harris County, Texas (the "Underlying Suit").[1]

NATCO brokers shipments of freight across the nation. According to the pleadings in the Underlying Suit, in November 1994, NATCO and Clayton Allen Potter entered into a Broker-Agent Agreement ("Agency Agreement"), in which Clayton Potter was authorized to do business as "NATCO-Houston" and as such acted as NATCO's agent booking freight transportation for NATCO's customers. Clayton Potter then formed A&P Transportation Co., Inc. ("A&P"), and "assigned the Agency Agreement to A&P."[2]

In 2008, NATCO's owner--Connie Eckley--began suspecting that NATCO's Chief Financial Officer--Robert P. McInnis--was engaged in

---

[1] The Underlying Suit is captioned: *A&P Transportation Co., Inc. v. North American Transport Concepts, Inc.*

[2] Document No. 26, ex. A-4 ¶ 20 (hereinafter, "Counterclaim").

"questionable accounting practices."[3]   An independent audit revealed that McInnis was improperly accounting and was approving improper cash disbursements, wire transfers, and loans to A&P, Clayton Potter, and Toby Potter (Clayton Potter's son).   NATCO thereupon terminated its employee McInnis on September 24, 2008.

On October 21, 2008, NATCO representatives met with Clayton and Toby Potter to discuss their "working relationship."[4]  "At the conclusion of the meeting, both parties agreed to take the time to listen to each other, to continue the dialogue in the coming weeks, and to resolve any remaining issues and to keep the relationship in place."[5]   NATCO alleges in its Counterclaim that unbeknownst to NATCO at the time of the October meeting, the Potters were not meeting with NATCO in good faith, they concealed from NATCO their true intentions shortly to launch their own competing freight-broker business, they had already formed for this secret purpose a new company called Superior Nationwide Logistics, Ltd. ("Superior"), had acquired for it a new employer identification number, and had applied to the U.S. Department of Transportation for a license.  All of this the Potters hid from NATCO throughout their October meeting with NATCO.

---

[3] Counterclaim ¶ 23.

[4] Counterclaim ¶ 29.

[5] Id.

A couple of weeks later, and "[f]inally ready to make their move," A&P filed the Underlying Suit against NATCO on November 5, 2008.  A week later NATCO formally terminated the Agency Agreement, revoked A&P's and Clayton Potter's authority to act on behalf of NATCO, and demanded the immediate return of all of NATCO's personal property.  The next day, the Potters' newly formed and now licensed company--Superior--publicly announced its presence as a competing broker.

Awakened to the scheme, NATCO filed its Counterclaims against A&P and Clayton Potter, and third-party claims against Superior, Toby Potter, T.A. Potter Management, LLC, and McInnis.  All defendants except McInnis (who was NATCO's former employee and never an insured of Burlington) tendered NATCO's suit to Burlington with requests for defense and indemnity under the Commercial General Liability insurance policy (the "Policy") issued to Superior in September, 2008, shortly after the Potters formed Superior and approximately six weeks before they filed the Underlying Suit and launched Superior as their new business. Burlington now moves for summary judgment that it owes no duty to defend or indemnify Superior, Clayton Potter, A&P, Toby Potter, and T.A. Potter Management, LLC (hereinafter "Defendants").

## II.   Standards of Review

### A.   Summary Judgment Standard

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to inter-rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the

underlying facts must be viewed in the light most favorable to the nonmoving party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).   "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.   Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993).   On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."   Id.   Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."   Anderson, 106 S. Ct. at 2513.

B.   Legal Standards Governing the Duty to Defend

"Under Texas law, an insurer may have a duty to defend a lawsuit against its insured."   Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 552 (5th Cir. 2004).   Texas courts employ the "eight corners" rule in determining whether an insurer has a duty to defend.   See id.; Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 528 (5th Cir. 2004) (citing King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002)); see also GuideOne Elite Ins. Co. v. Fielder Road Baptist Church, 197 S.W.3d 305, 308-09 (Tex. 2006).   "This rule 'requires the trier of fact to examine only the allegations in the [underlying] complaint and the

insurance policy in determining whether a duty to defend exists.'"
Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co., 99 F.3d
695, 701 (5th Cir. 1996) (quoting Gulf Chem. & Metallurgical Corp.
v. Associated Metals & Minerals Corp., 1 F.3d 365, 369 (5th Cir.
1993)); *see also* GuideOne, 197 S.W.3d at 308 (explaining the eight
corners rule).

　　"Thus, the duty to defend arises only when the facts alleged
in the complaint, if taken as true, would *potentially* state a cause
of action falling within the terms of the policy." Northfield, 363
F.3d at 528 (emphasis in original).  "If a petition does not allege
facts within the scope of coverage, an insurer is not legally
required to defend a suit against its insured."  Nat'l Union Fire
Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc., 939
S.W.2d 139, 141 (Tex. 1997).  An insurer can absolve itself of the
duty to defend by showing, within the confines of the eight corners
rule, "that the plain language of a policy exclusion or limitation
allows the insurer to avoid coverage of *all* claims."  Northfield,
363 F.3d at 528 (emphasis added).

　　The focus of the inquiry is on the alleged facts, not on the
asserted legal theories.  St. Paul Fire & Marine Ins. Co. v. Green
Tree Fin. Corp.-Tex., 249 F.3d 389, 392 (5th Cir. 2001).  "Facts
outside the pleadings, even those easily ascertained, are
ordinarily not material to the determination[,] and allegations
against the insured are liberally construed in favor of coverage."

GuideOne, 197 S.W.3d at 308 (citing Nat'l Union Fire Ins. Co. of
Pittsburgh, Pa., 939 S.W.2d at 141).

### III.  Discussion

Burlington contends that (1) NATCO's Counterclaim does not
allege a "personal and advertising injury" under the Policy;
(2) the Counterclaim does not allege a "bodily injury" under the
Policy; (3) the Counterclaim does not allege facts constituting
"property damage" under the Policy; and (4) the allegations in the
NATCO Counterclaim do not trigger A&P, Clayton Potter, and Toby
Potter's status as insureds under the Policy.  Because the Court
finds that the Counterclaim does not allege "personal and
advertising injury," "bodily injury," or "property damage," and
because the insureds assert no other possible basis that would
require Burlington to provide a defense, it need not consider
whether  A&P, Clayton Potter, and Toby Potter are also insureds
under Superior's Policy.

A.    "Personal and Advertising Injury"

   1.   Coverage for "Personal and Advertising Injury"

Coverage B of the Policy insures against "personal and
advertising injury liability," which is defined as "injury,
including consequential 'bodily injury', arising out of one or more
of the following offenses," which include:

> Oral or written publication, in any manner, of material
> that slanders or libels a person or organization except
> that this offense does not include slander or libel that
> disparages a person's or organization's goods, products
> or services.[6]

Slander and libel are the two types of defamation recognized by
Texas law.  "Defamation is a false statement about a person,
published to a third party, without legal excuse, which damages the
person's reputation."  Fiber Sys. Int'l, Inc. v. Roehrs, 470 F.3d
1150, 1161 (5th  Cir. 2006) (citing Moore v. Waldrop, 166 S.W.3d
380, 384 (Tex. App.--Waco 2005, no pet.)).

Defendants contend that NATCO's unfair competition claim
against Superior alleges slander or libel in paragraphs 67 and 68,
that such is personal and advertising injury, and that Burlington
is therefore obliged to provide a defense.  These paragraphs state:

> 67. Superior engaged in business conduct contrary to
>     honest practices in commercial matters as alleged
>     herein. . . . Superior, by and through its
>     representatives, represented that NATCO was no
>     longer in business.
>
> 68. Superior, through its representatives, . . .
>     represented that NATCO was no longer in business
>     for the purpose of gaining a competitive advantage
>     over NATCO. NATCO has a longstanding good
>     reputation in the industry. Superior, through
>     deception and confusion, hopes to induce customers
>     to book their business through Superior rather than
>     NATCO. . . . [F]alse and confusing representations
>     concerning the status of NATCO, caused customer
>     confusion.  Those customers with whom NATCO has

---

[6] Policy at App. 17.

> good relationships mistakenly believed either that
> NATCO is in some way affiliated with Superior or,
> no longer in business, thereby allowing Superior to
> capitalize on the good will and reputation of
> NATCO.  NATCO has and continues to suffer injury as
> a result of Superior's actions. NATCO requests
> disgorgement of, and for NATCO to receive as
> damages, all profits Superior received relating to
> any and all customers it has misled into doing
> business with Superior.

Statements that a company is "out of business" or bankrupt are defamatory. *See, e.g.,* Coll. Network Inc. v. Moore Educ. Pub. Inc., No. 09-50596, 2010 WL 1923763 (5th Cir. 2010) (upholding jury verdict that defendant's statements that the plaintiff was "out of business" or was "going out of business" were defamatory under Texas law).  Therefore, the factual allegations in NATCO's Counterclaim fall within the scope of the Policy's coverage for personal and advertising injury liability if no exclusion applies.

2.   Exclusions for "Personal and Advertising Injury"

Burlington argues that the facts alleged by NATCO in its counterclaim fall within a Policy exclusion applicable to the personal and advertising injury liability clause.  Coverage B contains the following exclusion:

This insurance does not apply to:

a.   **Knowing Violation Of Rights Of Another**

> "Personal and advertising injury" caused by or at
> the direction of the insured with the knowledge
> that the act would violate the rights of another

10

and would inflict "personal and advertising injury."[7]

Thus, in this instance where NATCO has alleged defamation as a "personal and advertising injury," Policy coverage for Defendants is excluded if the insured both (1) knows that the statement would violate another's rights, and (2) knows that the statement would inflict damage to another's reputation.

Defendants argue that NATCO's allegations potentially fall within coverage because defamation does not require knowledge, and may be proved by recklessness.  Defendants argue that "each and every statement could have been made either carelessly or recklessly with the 'hope' of gaining advantage over a competitor but with no idea (much less 'knowledge') of whether the statements would harm anyone or their reputations."[8]

NATCO's Counterclaim alleges that Defendants orchestrated and executed over a relatively short period of time a deceitful preemptive strike against NATCO to capture as many of its customers as possible.  The Counterclaim alleges that when NATCO discovered that A&P and the Potters had procured improper cash disbursements, wire transfers, and loans through NATCO's McInnis, NATCO's representatives met with the Potters on October 21, 2008.  At this meeting, the Potters assured NATCO that they wished "to resolve any

---

[7] Policy at App. 30.

[8] Document No. 38 at 4.

11

remaining issues" and "keep the relationship in place."  NATCO

alleges that these statements were not made in good faith but only

to "buy time" and that, unbeknownst to NATCO and hidden from it by

Defendants, the Potters had formed Superior two months *before* the

October meeting, had obtained for it an employer identification

number, and had applied to the U.S. Department of Transportation

for a license.  Then, fifteen days after the meeting, when "finally

ready to make their move," the Potters and A&P filed the Underlying

Suit against NATCO, which precipitated termination of the Agency

Agreement, followed by Defendants' immediate public launch of

Superior's competing business "operating out of the same office

previously used by NATCO Houston."

In the context of these alleged facts, what NATCO alleges next

occurred--after the Underlying Suit was filed but before NATCO's

counterclaim was filed, is central to the Policy's exclusion:

> Since the date of the lawsuit, Clayton Potter, Toby
> Potter, and A&P have continued to conspire with Robert P.
> McInnis to damage NATCO's business by diverting
> receivables and business away from NATCO, **representing
> that NATCO was no longer in business, representing that
> Superior had "bought out" NATCO, disparaging NATCO and
> NATCO's owners**, interfering with business relationships,
> interfering with NATCO's agents' employee relationships,
> **and eventually doing everything they could to attack
> NATCO's business, destroy the company, raid its offices,
> and unfairly compete.**[9]

---

[9] Counterclaim ¶ 32 (emphases added).

According to the Counterclaim, the defamatory statements by Superior's representatives after Superior opened for business the next day in the same office "previously used by NATCO Houston," that "NATCO was no longer in business," that "Superior had 'bought out' NATCO," and the like, were part of Defendants' scheme to "attack" and "destroy" NATCO by using "deception and confusion" in order to "misle[ad]" NATCO's customers.

These are not allegations of libelous statements made in "carelessness" or even "recklessness." To the contrary, any fair reading of the facts alleged--of the October meeting, of Defendants' cunning and active concealment from NATCO of their preparations to launch a competing business from out of the same office in which until the previous day they were doing business as NATCO's agent under the name of "NATCO Houston," of Defendants' representations to others that NATCO "was no longer in business," and that "Superior had 'bought out' NATCO," and of Defendants' *motives* for their defamations and deceit, "to attack NATCO's business" and "destroy" NATCO to gain "competitive advantage over NATCO" and in "hopes to induce customers to book their business through Superior rather than NATCO"--all lead to one inevitable conclusion: Defendants well knew that their statements were false and defamatory of NATCO, were uttered with knowledge that their statements would violate the rights of NATCO, and knew that the statements would damage NATCO's reputation. In other words,

13

NATCO's counterclaim alleges facts that exclude coverage under the Policy's proviso for "personal and advertising injury." *Cf.* Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82-83 (Tex. 1997) (finding automobile insurer had no duty to defend insured driver in suit where victim of a drive-by shooting alleged that shots were fired from the car the insured was driving because, although the victim pleaded legal theories of negligence and gross negligence, he alleged facts (i.e., a drive-by shooting) establishing the origin of his damages was intentional behavior). Burlington therefore has no duty to defend Superior or other of Defendants under the "personal and advertising injury" clause.

Even though the facts alleged by NATCO in its counterclaim are such as to exclude coverage and a duty to defend under the personal and advertising injury proviso, it is premature to rule on whether ultimately there will be indemnity coverage under the Policy. *See* Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 536-37 (5th Cir. 2004) ("Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless '*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*.'" (quoting Griffin, 955 S.W.2d at 84)); *see also* Gore Design Completions, Ltd. v. Hartford Fire Ins. Co., 538 F.3d 365, 368 n.6 (5th Cir. 2008) (noting that district court's ruling on duty to indemnify was premature because, even though allegations in

14

complaint did not give rise to a duty to defend, it did not
preclude a situation where evidence presented at trial could
implicate coverage); <u>Carter v. Westport Ins. Corp.</u>, No. B-09-09,
2010 WL 1667789, at *4 (S.D. Tex. April 23, 2010).  Burlington's
motion for summary judgment will therefore be denied on whether it
has a duty to indemnify under the "personal and advertising injury"
clause.

>    3.    <u>Allegations Regarding the Use of NATCO's Name</u>

Burlington asserts that the Policy does not cover, and
explicitly excludes, personal or advertising injury arising out of
infringement of trade secrets or unauthorized use of another's
intellectual property.    Defendants    assert    that    "NATCO's
counterclaim alleges that Defendants made 'use' of its intellectual
property, its trade name, in 'communications with existing and
potential customers,'" and therefore "the policy affords Defen-
dant[s] coverage for 'personal and advertising injury' within the
meaning  of  Definition  14  (g)  &  14  (f)  [of  the  Policy]."[10]
Defendants' reliance on Policy definitions at 14(f) and (g) is
wholly without merit because those subparagraphs were both *deleted*
from the Policy by an endorsement.[11]   There is no coverage for
liability stemming from the use of NATCO's name.

---

[10] Document No. 33 at 10.

[11] <u>Id.</u> at App. 17.

B.    "Property Damage"

Burlington also asserts that NATCO does not allege a covered claim for "property damage" under the Policy.  Coverage A of the Policy insures against "bodily injury and property damage liability" which "is caused by an 'occurrence' that takes place in the 'coverage territory.'"[12]  "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. . . .; or

b.    Loss of use of tangible property that is not physically injured.[13]

Defendants contend that NATCO's Counterclaim for conversion (Count VII) asserts a claim for property damage liability.  NATCO alleges:

> NATCO owned and had the right to control the computer monitors, hard drives, a router, a switch, printers, a fax machine, a laptop, telephones, a telephone system, and servers (the "Office Supplies") supplied to Clayton Allen Potter and A&P. The Office Supplies were used in the office formerly occupied by the NATCO-Houston agency and A&P. After November 13, 2008, the Office Supplies were used in the office space occupied by A&P and Superior.  These office supplies were the property of NATCO.  NATCO demanded return of the Office Supplies. Clayton Potter, A&P, Toby Allen Potter, and Superior wrongfully exercised dominion and control over the property by refusing to return the Office Supplies.[14]

---

[12] Id. at App. 25.

[13] Id. at App. 39.

[14] Document No. 26, ex. A-4, ¶ 63.

The Policy provides coverage only for "property damage" caused by an "occurrence."[15]  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[16]  Whether an event is an accident is judged from the perspective of the insured, unless the Policy provides otherwise.  Roman Catholic Diocese of Dallas, *ex rel.* Grahmann v. Interstate Fire & Cas. Co., 133 S.W.3d 887, 894-95 (Tex. App.–-Dallas 2004, pet. denied) (citing King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 192 (Tex. 2002)).

Under Texas law, conversion claims are not covered under a commercial general liability policy similar to the one in this case.  Potomac Insurance Co. of Illinois v. Peppers, 890 F. Supp. 634, 641-42 (S.D. Tex. 1995).  In Peppers, the victim alleged in the underlying action that the insured converted several items of personal property including furniture and software.  Id.  The Court held there was no coverage for the conversion claim because all allegations surrounding the conversion claim stated that the insured intended to exercise dominion over the victim's property; there were no allegations that could indicate an accident.  Id. at 642.

Similarly, NATCO's Counterclaim here explicitly alleges that "NATCO demanded the return of the Office Supplies" and the

---

[15] Policy at App. 25.

[16] Id. at App. 38.

17

Defendants wrongfully "refus[ed]" to return them.[17]   Therefore,
Defendants' intent and actions to exercise dominion and control
over NATCO's office supplies was no accident, or "occurrence,"
within the meaning of the Policy.

C.     "Bodily Injury"

    Burlington also moves for summary judgment that the NATCO
Counterclaim does not assert covered claims for "bodily injury."[18]
Defendants have made no argument to the contrary.   Undefended
claims may be regarded as abandoned.   *See, e.g.*, Thompson v. Exxon
Mobil Corp., 344 F. Supp. 2d 971, 976 (E.D. Tex. 2004) (holding
that where the defendant fully briefed all of plaintiffs' claims on
summary judgment, and plaintiffs only responded on two claims,
plaintiffs were deemed to have abandoned their remaining claims).
Thus, Burlington is entitled to summary judgment that the NATCO
Counterclaim does not assert covered claims for "bodily injury."

D.     Defendants' Motion to Join Bankruptcy Trustee as Necessary
       Party and Motion to Vacate Submission Date on Plaintiff's
       Motion for Summary Judgment

    "[O]ut of an abundance of caution," Burlington named NATCO's
former employee Robert McInnis as defendant in this suit despite
the fact that McInnis is not named as an insured under the Policy

---

[17] Counterclaim ¶ 63.

[18] Document No. 26 at 11.

and has never requested a defense or indemnity from Burlington. McInnis was apparently served but never appeared, never sought any relief, and Burlington dismissed him as a defendant just after learning of McInnis's bankruptcy proceeding. Defendants' assertion that "the Court should vacate the submission date on [Burlington]'s motion [for summary judgment] and not consider the motion until such time as [McInnis's Bankruptcy] Trustee is notified of the action, is served, and has time to answer and to respond to the motion,"[19] has no merit. McInnis is not an insured under the Policy, he has never claimed to be entitled to any coverage under the Policy, and the interpretation of the Policy has no bearing whatever upon him, his Bankruptcy Estate, or the Bankruptcy Trustee. Defendants' motion is denied.

## IV. Order

For the reasons set forth, it is hereby

ORDERED that Plaintiff The Burlington Insurance Company's Motion for Summary Judgment (Document No. 26) is GRANTED IN PART and it is ADJUDGED that The Burlington Insurance Company owes no duty to defend Defendants Superior Nationwide Logistics, Ltd., Toby Allen Potter, T.A. Potter Management, LLC, A&P Transportation Co., Inc., and Clayton Allen Potter in the Underlying Suit, and that it has no duty to indemnify under the Policy for personal or

---

[19] Document No. 32 at 6.

19

advertising injury arising out of infringement of trade secrets or unauthorized use of another's name, for "property damage" under Coverage A of the Policy, and for "bodily injury," and the motion is DENIED without prejudice as not ripe regarding whether it will have a duty to indemnify under the Policy for personal or advertising injury arising out of oral or written communication(s) that slanders or libels a person or organization.  It is further

ORDERED that Defendants Superior Nationwide Logistics, Ltd., Toby Allen Potter, T.A. Potter Management, LLC, A&P Transportation Co., Inc., and Clayton Allen Potter's Cross-Motion for Summary Judgment (Document No. 33) and Motion to Join Bankruptcy Trustee as Necessary Party and Motion to Vacate Submission Date on Plaintiff's Motion for Summary Judgment (Document Nos. 31 & 32), are in all things DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this <u>10th</u> day of August, 2010.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE